## In Re Anonymous No. 48 D.B. 77

Disciplinary Board Docket No. 48 D.B. 77.

To The Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

MUNDY, *Member*, June 26, 1984 — Pursuant to the Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, The Disciplinary Board of the Supreme Court of Pennsylvania submits its following findings and recommendations to your

honorable court with respect to the above petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

Petitioner seeks reinstatement to the Bar from a disbarment by consent ordered July 7, 1978, in accordance with Rule 215 of the Pennsylvania Rules of Disciplinary Enforcement. He had tendered a certified statement of resignation on June 30, 1978 after his appeals on a conviction of obstruction of justice had been exhausted.

Petitioner herein was the subject of a ten count indictment returned January 28, 1977, which included: violation of the Racketeering Act, bribery, extortion, mail fraud, conspiracy, obstruction of a criminal investigator, and obstruction of justice. On May 20, 1977, a Federal Court and jury acquitted petitioner of all but the two counts of obstruction of justice. Petitioner was sentenced in June of 1977 to two years of imprisonment on each count to be served concurrently and was fined $5,000.

Petitioner served one year in [   ] Federal Prison and paid the $5,000 fine. He was paroled on July 17, 1979, and that parole was terminated on July 17, 1980.

His conviction of obstruction of justice was based upon his having contacted two prospective governmental witnesses in an investigation of alleged influence peddling. These two individuals, one at [   ] University and the other at the University of [   ], were alleged by the government to have been contacted by [petitioner] and others in an attempt to gain favored treatment for individuals applying for admission to graduate school at these two institutions. The jury concluded that petitioner's admitted

communication with these two witnesses amounted to an attempt to alter the character of their testimony and thus obstruct justice.

The instant petition for reinstatement was filed on August 12, 1983 in the Office of the Disciplinary Board of the Supreme Court of Pennsylvania, a period slightly in excess of five years from the date on which petitioner was disbarred by consent by this honorable court. Pursuant to the provisions of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania referred the matter to hearing commitee [  ] (hereinafter referred to as committee), consisting of [  ].

Following appropriate notice, the committee conducted a hearing in connection with the instant petition for reinstatement on December 14, 1983. Petitioner was represented at the hearing by the Honorable [A], who filed a preliminary brief on behalf of petitioner.

At the conclusion of the hearing, committee filed a unanimous recommendation of reinstatement and notified all parties by letter of this finding on April 16, 1984. No exceptions, objections, or briefs were filed on behalf of either side within the time allotted under the rules and the matter was thus referred to the board and assigned to the undersigned as an uncontested matter.

On May 23, 1984, the undersigned made a report and recommendation to the entire board, following which this board, after an extensive and complete review of the entire record in this matter, including the report, findings and recommendation of the hearing committee, voted unanimously to recommend that the instant petition of reinstatement be granted for reasons set forth hereinafter.

## II. DISCUSSION

In order for petitioner to gain reinstatement to the Bar of the Supreme Court of Pennsylvania, he has the burden of demonstrating, by clear and convincing evidence, that he has both the moral qualifications and the competency and learning in the law required for admission to practice in this Commonwealth. In addition, he has the burden of demonstrating that his resumption of the practice of law will not be detrimental to the integrity and standing of the Bar or the administration, nor subversive of the public interest. See Rule 218(c)(3)(i) of the Pennsylvania Rules of Disciplinary Enforcement.

It should be noted from the outset that the committee found unanimously, and the Office of Disciplinary Counsel did not challenge the finding, that petitioner has the prerequisite competency and learning in the law to qualify for reinstatement, and further that he also possesses the moral qualifications required for admission to practice in this Commonwealth. Petitioner had been a member in good standing before the Bar of this court for a period of approximately 32 years prior to his conviction. For almost the entire period he had been engaged in the practice of law with his brother in a firm known as [    ].

Petitioner was admitted to the practice of law in the Commonwealth in 1946. In 1954, he was elected to the [B] and was at the time the youngest member of that [    ] so elected. He was re-elected to this post 12 times, each time by a majority percentage that was the highest or second highest in the Commonwealth. In 1965, he was named the [    ] in the [B], and in the following term became the [    ]. He was elected to the position of [    ] of the [B] in 1969, a post to which he was re-elected three

additional times thus becoming the first individual in this state ever to be elected [      ] four times. He also was elected president of the [      ] in 1973. He held both posts at the time of his indictment and conviction in 1977.

Since his release from prison, he has maintained an active study of, and interest in, the law. He demonstrated at the time of the hearing a notebook which is comprised of case notes taken from advance sheets, the Legal Intelligencer, and other legal journals. He testified that he keeps binders on all judicial decisions promulgated in the Commonwealth except for criminal law, corporate law, and public utility law, for he has little interest in those areas. He has worked under the supervision and direction of his brother as a paralegal since 1980 for which he has received very limited compensation. He testified that he was paid a sum of $10,000 for his efforts in 1981, but that he has not been paid for these services in any other year.

He was closely questioned on whether he had in fact fully refrained from crossing the line which separates paralegal work from legal representation. He testified that he had no direct dealings with the courts at any time during his tenure as a paralegal, that he did not refer cases, or that he did not in any way hold himself out as a practicing attorney. He confined his activities to the preparation of pleadings, motions, briefs and memorandums of law.

During the time since his release from prison, he has also been actively engaged in a mortgage company and real estate agency of which he and his brothers are sole shareholders. Remuneration from these enterprises has enabled him to sustain himself and his family financially. In addition, he has been active in a number of commendable community activities. He has been a member of the Execu-

tive Board of the [    ] Home for the Aged. He is also a member of the [    ] Commission and the [    ] Congress. Prior to his imprisonment during the time in which his appeals were pending, he became very active in an organization founded for the purpose of aiding convicted individuals to become rehabilitated.

The hearing committee also passed upon petitioner's burden to demonstrate that the resumption of the practice of law by petitioner will be neither detrimental to the integrity and standing of the Bar or the administration of justice, nor subversive of the public interest. To this end, petitioner called a number of witnesses, all of whom are of very high standing in the community, each of whom spoke movingly and convincingly of petitioner's moral and professional capacity and character. These witnesses testified unequivocally that petitioner's reputation for integrity, honesty, and competence as an attorney was of the highest order. Furthermore, they testified that petitioner's reputation for same continues to be of the highest order today despite his conviction. Several witnesses testified that given petitioner's years of experience, coupled with his efforts to further and continue his legal education, as well as his paralegal work, would serve to strengthen his competence to practice law and make him an outstanding credit to the Bar. Finally, these witnesses testified to their views of petitioner as a moral, kind, and compassionate person. Each witness knew of petitioner's trial and conviction, but nevertheless testified movingly that these events had not reduced the esteem in which he was held.

An example of the public esteem which remains despite his conviction was the testimony of one of the witnesses on his behalf, that petitioner, after his release from prison, was invited by Governor

Thornburgh to participate in the Commonwealth's tricentennial activities. On that occasion, he was introduced by the Governor to the multitudes in attendance and received a tumultuous ovation. Later he was brought before a joint session of the [     ], and introduced by the [     ], the Honorable [C], who had served as [     ] during [petitioner's] tenure as [     ] of the [B]. His introduction was received by a standing ovation from all of the members on either side of the aisle.

Petitioner himself testified at length concerning the circumstances leading up to his trial and the results thereof. He expressed contrition and acknowledged that the conduct which led to his conviction on the counts of obstructing justice had been wrong. The hearing committee was highly impressed with petitioner's candor.

In light of the foregoing, this board adopts the following findings of hearing committee [     ] fully and unequivocally and finds that the record in this proceeding demonstrates without quarrel or contradiction that petitioner does in fact possess the prerequisite moral qualifications for reinstatement to the practice of law in the Commonwealth of Pennsylvania.

## III. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Disciplinary Board of the Supreme Court of Pennsylvania adopted the following findings of hearing committee [     ] as its findings of fact and conclusions of law in this reinstatement proceeding:

1. Petitioner has not practiced law since the effective date of his disbarment by consent.

2. Petitioner has complied with all the rules relating to the furnishing of notices upon his disbarment.

3. Petitioner has demonstrated by clear and convincing evidence that he has the moral qualifications, competency, and learning in the law required for admission to practice law in Pennsylvania, and that the resumption of the practice of law within this Commonwealth by petitioner will not be detrimental to the integrity and standing of the Bar, or the administration of justice, nor will it be subversive of the public interest.

## IV. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully and unanimously recommends to the Supreme Court of Pennsylvania that the instant petition for reinstatement of [petitioner] to the practice of law in the Commonwealth of Pennsylvania be granted by your honorable court, and that the court direct that all necessary expenses incurred by this board in the investigation and processing of the instant petition for reinstatement be borne and paid for by said petitioner. A statement of such expenses is appended to the instant report.

## ORDER

NIX, C.J., And now, this July 13, 1984, the recommendation of the Disciplinary Board dated June 26, 1984, is accepted, and the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.